UNITED STATES DISTRICT COURT
DISTRICT OF SOUTH DAKOTA
SOUTHERN DIVISION

In the Matter of the Search Regarding    No. 4:20-mj-66

20-082-04

**REDACTED APPLICATION FOR SEARCH WARRANT**

I, David Sundet, being duly sworn depose and say:

1. I am a Special Agent with the Drug Enforcement Administration (DEA), the U.S. Justice Department in Sioux Falls, South Dakota, and make this application for information about the location of the cellular telephones fully described in Attachment A, attached hereto and incorporated herein by reference (the "Target Cell Phone"), whose service provider is ▮▮▮▮▮▮▮, a wireless telephone service provider headquartered at ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮. The location information to be seized is described in Attachment B, attached hereto and incorporated herein by reference.

2. I have reason to believe that said information will aid law enforcement in the location and apprehension of persons suspected of committing criminal offenses, concerning violations of 21 U.S.C. §§ 841(a)(1) and 846 and others.

3. The facts to support a finding of probable cause are contained in my Affidavit filed herewith.

_____
David Sundet, Special Agent
Drug Enforcement Administration

Sworn to and subscribed before me, telephonically, on the 20th day of August, 2020, at Sioux Falls, South Dakota.

_____
VERONICA L. DUFFY
UNITED STATES MAGISTRATE JUDGE

UNITED STATES DISTRICT COURT
DISTRICT OF SOUTH DAKOTA
SOUTHERN DIVISION

In the Matter of the Search Regarding    No. 4:20-mj-66

20-082-04

**REDACTED AFFIDAVIT IN SUPPORT OF AN APPLICATION FOR A SEARCH WARRANT**

I, Special Agent David Sundet, being first duly sworn, hereby depose and state as follows:

1. I make this affidavit in support of an application for a search warrant for information associated with a certain cellular telephone assigned call number ▮▮▮▮▮▮ ("**Target Cell Phone**") that is stored at premises controlled by ▮▮▮▮▮▮. The information to be searched is described in the following paragraphs and in Attachment A. This affidavit is made in support of an application for a search warrant under 18 U.S.C. § 2703(c)(1)(A) to require ▮▮▮▮▮▮ to disclose to the government copies of the information further described in Section I of Attachment B. Upon receipt of the information described in Section I of Attachment B, government-authorized persons will review the information to locate items described in Section II of Attachment B.

2. Because this warrant seeks the prospective collection of information, including cell-site location information, that may fall within the statutory definitions of information collected by a "pen register" and/or "trap and trace device," see 18 U.S.C. §§ 3127(3) and 3127(4), the requested warrant is designed to also comply with the Pen Register Act. See 18 U.S.C. §§ 3121-3127. The requested warrant therefore includes all the information required to be included in an order pursuant to that statute. See 18 U.S.C. § 3123(b)(1).

3. I am a Special Agent with the Drug Enforcement Administration (DEA), the U.S. Justice Department and have been so employed for approximately 12 months. I am currently assigned to the DEA Sioux Falls Resident Office (SFRO) in Sioux Falls, SD, and charged with investigating drug trafficking and money laundering violations under Title 18 and Title 21 of the United States Code. I have received 16 weeks of specialized training in Quantico, Virginia, pertaining to drug identification and drug trafficking, undercover operations, and electronic and physical surveillance procedures. Before becoming a Special Agent with the DEA, your Affiant was a Texas Peace

[1]

Officer with the Killeen Police Department of Killeen, Texas, and prior to that, a Federal Maritime Law Enforcement Officer with the U.S. Coast Guard, Department of Homeland Security.

4. The facts in this affidavit come from my personal observations, my training and experience, and information obtained from other agents and witnesses. This affidavit is intended to show merely that there is sufficient probable cause for the requested warrant and does not set forth all of my knowledge about this matter.

5. I know from my training and experience that persons involved in the possession and distribution of controlled substances will often utilize vehicles not registered in their name and/or utilize rental vehicles to transport illegal substances, firearms and monies in efforts to conceal their identity from law enforcement. They will also travel outside the State of South Dakota in furtherance of their illegal enterprise to obtain controlled substances, to pay for controlled substances or to transport or spend the proceeds of the sale of controlled substances.

6. I know from my training and experience that individuals involved in the possession and distribution of controlled substances will often utilize electronic devices such as mobile telephones, electronic address books, computers, etc., to facilitate communications with and/or store names, addresses and/or telephone numbers of associates, customers and sources of supply.

7. Through training and experience, I know that many modern mobile telephones have the ability to create, send, receive, and store digital media files in the form of digital photographs, audio and video recordings, and written messages such as text messages or email. Through training and experience, I know that individuals involved in the possession and distribution of controlled substances will carry their cellular telephones on their person. Having the ability to have precise GPS location of that telephone will enable law enforcement to safely and surreptitiously conduct surveillance of their illegal narcotic activities. Through training and experience, I know that individuals involved in the possession and distribution of controlled substances will often change their cellular telephone numbers if they suspect it has been compromised and/or detected by law enforcement.

8. Based on the facts set forth in this affidavit, I believe there is probable cause to believe that violations of 21 U.S.C. §§ 841(a)(1) and 846 have been committed, are being committed, and will be committed by ▮▮▮▮▮ ▮▮▮▮▮ and members of his Drug Trafficking Organization (DTO). There is also probable cause to believe that the location information described in Attachment B will constitute evidence of these criminal violations, and will lead

[2]

to the identification of individuals who are engaged in the commission of these offenses.

**PROBABLE CAUSE**

9. On 

10. The CS provided the **Target Cell Phone** and stated 

11. On ███████████████████████████████

12. On ███████████████████████████████

13. On ███████████████████████████████

14. On ███████████████████████████████

15. Based on the foregoing, I have shown that ███████████████████████████████

16. In my training and experience, I have learned that ██████ is a company that provides cellular telephone access to the general public. I also know that providers of cellular telephone service have technical capabilities that allow them to collect and generate information about the locations of the cellular telephones to which they provide service, including cell-site data, also known as "tower/face information" or "cell tower/sector records." Cell-site data identifies the "cell towers" (i.e., antenna towers covering specific geographic areas) that received a radio signal from the cellular telephone and, in some cases, the "sector" (i.e., faces of the towers) to which the telephone connected. These towers are often a half-mile or more apart, even in urban areas, and can be 10 or more miles apart in rural areas. Furthermore, the tower closest to a wireless device

does not necessarily serve every call made to or from that device. Accordingly, cell-site data provides an approximate location of the cellular telephone but is typically less precise than other types of location information, such as E-911 Phase II data or Global Positioning Device ("GPS") data.

17. Based on my training and experience, I know that ▇▇▇▇▇ can collect cell-site data about the **Target Cell Phone**. I also know that wireless providers such ▇▇▇▇▇ typically collect and retain cell-site data pertaining to cellular phones to which they provide service in their normal course of business in order to use this information for various business-related purposes is a company that provides cellular telephone access to the general public. I also know that providers of cellular telephone service have technical capabilities that allow them to collect and generate information about the locations of the cellular telephones to which they provide service, including cell-site data, also known as "tower/face information" or "cell tower/sector records." Cell-site data identifies the "cell towers" (i.e., antenna towers covering specific geographic areas) that received a radio signal from the cellular telephone and, in some cases, the "sector" (i.e., faces of the towers) to which the telephone connected. These towers are often a half-mile or more apart, even in urban areas, and can be 10 or more miles apart in rural areas. Furthermore, the tower closest to a wireless device does not necessarily serve every call made to or from that device. Accordingly, cell-site data provides an approximate location of the cellular telephone but is typically less precise than other types of location information, such as E-911 Phase II data or Global Positioning Device ("GPS") data.

18. Based on my training and experience, I know ▇▇▇▇▇ can collect cell-site data about the **Target Cell Phone**. I also know that wireless providers such ▇▇▇▇▇ typically collect and retain cell-site data pertaining to cellular phones to which they provide service in their normal course of business in order to use this information for various business-related purposes.

## CELLULAR TELEPHONE PROVIDER RECORDS

19. In my training and experience, I have learned that the Service Provider is a company that provides cellular communications service to the general public. I also know that providers of cellular communications service have technical capabilities that allow them to collect and generate information about the locations of the cellular devices to which they provide service, including cell-site data, also known as "tower/face information" or "cell/tower sector records." Cell-site data identifies the "cell towers" (i.e., antennae towers covering specific geographic areas) that received a radio signal from the cellular device and, in some cases, the "sector" (i.e., faces of the towers) to which the device connected. These towers are often a half mile or more apart, even in

urban areas, and can be 10 or more miles apart in rural areas. Furthermore, the tower closest to a wireless device does not necessarily serve every call made to or from that device. Accordingly, cell-site data provides an approximate general location of the cellular device.

20. Based on my training and experience, I know that the Service Provider can collect cell-site data on a prospective and historic basis about the Target Cellular Telephone. Based on my training and experience, I know that for each communication a cellular device makes, its wireless service provider can typically determine: (1) the date and time of the communication; (2) the telephone numbers involved, if any; (3) the cell tower to which the customer connected at the beginning of the communication; (4) the cell tower to which the customer was connected at the end of the communication; and (5) the duration of the communication. I also know that wireless providers such as the Service Provider typically collect and retain cell-site data pertaining to cellular devices to which they provide service in their normal course of business in order to use this information for various business-related purposes.

21. Based on my training and experience, I know that some service providers can also collect per-call measurement data, which some refer to as the "real-time tool" ("RTT"). RTT data estimates the approximate distance of the cellular device from a cellular tower based upon the speed with which the signals travel between the device and the tower. This information can be used to estimate an approximate location range that is more precise than typical cell-site data.

22. Based on my training and experience, I know that the Service Provider can provide Provides periodic location updates (PLU) via email at intervals of no less than 15 minutes. This tool will provide more precise radius in an urban area where there are a lot of towers. In more rural areas with less towers you will see a larger radius. The latitude and longitude measurements are based on the Verizon 3G/4G cell site and sector data obtained from a Verizon Mobile Switching Center/Mobility Management Entity. The measurements are best estimates and are not related to any GPS measurement. The accuracy of the estimated distance depends on many factors such as power, beam width and orientation of the antenna. Note that any radius reading over 1000m should not be considered an accurate calculation of the distance from the estimated latitude/longitude. Additionally provided is a link to Google Maps, which indicates where Google Maps plots the latitude and longitude measurements. T-Mobile USA makes no representation as to the accuracy of Google Maps.

23. Based on my training and experience, I know each cellular device has one or more unique identifiers embedded inside it. Depending on the cellular network and the device, the embedded unique identifiers for a cellular

[6]

device could take several different forms, including an Electronic Serial Number ("ESN"), a Mobile Electronic Identity Number ("MEIN"), a Mobile Identification Number ("MIN"), a Subscriber Identity Module ("SIM"), a Mobile Subscriber Integrated Services Digital Network Number ("MSISDN"), an International Mobile Subscriber Identifier ("IMSI"), or an International Mobile Equipment Identity ("IMEI"). The unique identifiers – as transmitted from a cellular device to a cellular antennae or tower – can be recorded by pen-trap devices and indicate the identity of the cellular device making the communication without revealing the communication's content.

24. Based on my training and experience, I know that wireless providers such as the Service Provider typically collect and retain information about their subscribers in their normal course of business. This information can include basic personal information about the subscriber, such as name and address, and the method(s) of payment (such as credit card account number) provided by the subscriber to pay for wireless communication service. I also know that wireless providers such as the Service Provider typically collect and retain information about their subscribers' use of the wireless service, such as records about calls or other communications sent or received by a particular device and other transactional records, in their normal course of business. In my training and experience, this information may constitute evidence of the crimes under investigation because the information can be used to identify the Target Cellular Telephone's user or users and may assist in the identification of co-conspirators and/or victims.

## AUTHORIZATION REQUEST

25. Based on the foregoing, I request that the Court issue the proposed search warrant, pursuant to Federal Rule of Criminal Procedure 41 and 18 U.S.C. § 2703(c).

26. I further request that the Court direct ▬▬▬ to disclose to the government any information described in Attachment B that is within its possession, custody, or control. I also request that the Court direct ▬▬▬, to furnish the government all information, facilities, and technical assistance necessary to accomplish the collection of the information described in Attachment B unobtrusively and with a minimum of interference with ▬▬▬ services, including by initiating a signal to determine the location of the Target Cell Phone on ▬▬▬ network or with such other reference points as may be reasonably available, and at such intervals and times directed by the government. The government shall reasonably compensate ▬▬▬ for reasonable expenses incurred in furnishing such facilities or assistance.

27. I further request that the Court authorize execution of the warrant at any time of day or night, owing to the potential need to locate the Target Cell Phone outside of daytime hours.

_____
David Sundet
Special Agent
US Drug Enforcement Administration

Sworn to and subscribed before me, telephonically, on the 20th day of August, 2020, at Sioux Falls, South Dakota.

_____
VERONICA L. DUFFY
United States Magistrate Judge

[8]

UNITED STATES DISTRICT COURT
DISTRICT OF SOUTH DAKOTA
SOUTHERN DIVISION

In the Matter of the Search Regarding   No. __4:20-mj-66__

20-082-04                               **REDACTED SEARCH WARRANT**


TO:   ANY AUTHORIZED LAW ENFORCEMENT OFFICER

An application by a federal law enforcement officer or an attorney for the government requests the search for information about the location of the cellular telephone fully described in Attachment A, attached hereto and incorporated herein by reference (the "Target Cell Phone"), whose service provider is ▮▮, a wireless telephone service provider headquartered ▮▮ (the "Service Provider"), regarding violations of 21 U.S.C. §§ 841(a)(1) and 846 and others. The location information to be provided is described in Attachment B, attached hereto and incorporated herein by reference,

To the extent that the information described in Attachment B (hereinafter, "Location Information") is within the possession, custody, or control of Service Provider, Service Provider is required to disclose the Location Information to the government beginning the date of issuance of the search warrant, until 30 days from the date of issuance of the search warrant.

In addition, Service Provider must furnish the government all information, facilities, and technical assistance necessary to accomplish the collection of the Location Information unobtrusively and with a minimum of interference with its services, including by initiating a signal to determine the location of the Target Cell Phone on its network or with such other reference points as may be reasonably available, and at such intervals and times directed by the government.

The government shall compensate Service Provider for reasonable expenses incurred in furnishing such facilities or assistance.

I find that the affidavit, or any recorded testimony, establish probable cause to permit the location search.

This warrant does not authorize the seizure of any tangible property. In approving this warrant, the Court finds reasonable necessity for the seizure of the Location Information. *See* 18 U.S.C. § 3103a(b)(2).

**YOU ARE COMMANDED** to execute this warrant on or before <u>Sept. 3, 2020</u> *(not to exceed 14 days)*

☒ in the daytime – 6:00 a.m. to 10:00 p.m.

☐ at any time in the day or night as I find reasonable cause has been established.

Unless delayed notice is authorized below, you must give a copy of the warrant and a receipt for the property taken to the person from whom, or from whose premises, the property was taken, or leave the copy and receipt at the place where the property was taken.

The officer executing this warrant, or an officer present during the execution of the warrant, must prepare an inventory as required by law and promptly return this warrant and inventory to the undersigned Judge.

☐ Pursuant to 18 U.S.C. § 3103a(b), I find that immediate notification may have an adverse result listed in 18 U.S.C. § 2705 (except for delay of trial), and authorize the officer executing this warrant to delay notice to the person who, or whose property, will be searched or seized, for 30 days.

☐ for _____ days *(not to exceed 30)*.

☐ until, the facts justifying, the later specific date of _____.

<u>8-20-2020 at 2:15 pm CDT</u> at Sioux Falls, South Dakota
Date and Time Issued Telephonically

*[signature]*
VERONICA L. DUFFY
UNITED STATES MAGISTRATE JUDGE

[2]

**REDACTED ATTACHMENT A**
**Property to Be Searched**

███ The cellular telephone assigned call number ███ ███ (**"Target Cell Phone"**) that is stored at premises controlled by ███ ███ a wireless telephone service provider headquartered at ███ ███ ███

2. Records and information about the location of the Target Telephone that is within the possession, custody, or control of ███, including information about the location of the cellular telephone if it is subsequently assigned a different call number.

[1]

# REDACTED ATTACHMENT B
## Particular Things to be Seized

I. **Information to be Disclosed by the Provider**

All information about the location of the cellular telephone assigned call number ▮▮▮▮▮▮▮▮ (the "Target Telephone") for the time period starting the date of issuance of the search warrant, until 30 days from the date of issuance of the search warrant, during all times of day and night ▮▮▮▮▮▮▮▮

▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

II. **Information to be Seized by the Government**

All information described above in Section I that ▮▮▮▮▮▮▮▮ the Target Telephone and/or constitutes evidence of violations of 21 U.S.C. §§ 841(a)(1) and 846 involving ▮▮▮▮▮▮▮▮ or other unidentified subject(s).

[2]